IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

Case No.:

BILL NELSON FOR U.S. SENATE,

     Plaintiff,

v.

KEN DETZNER, in his official capacity
as Florida Secretary of State,

     Defendant.
_____/

## **NOTICE OF REMOVAL**

     Defendant, the Florida Secretary of State Detzner, pursuant to 28 U.S.C. §§ 1441-1446 and Northern District of Florida Local Rule 7.2, hereby gives notice of removal of this action from the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, to this Court.  As grounds for removal, the Secretary states as follows:

     1.    This action was commenced in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, as Case No. 2018 CA 002443, by the filing of a Complaint against the Secretary. A copy of the Complaint is attached as Exhibit A.

2.      The Complaint brings a claim for violation of the U.S. Constitution. *See* Exhibit A at ¶¶ 1, 15, 24, 26, 28, 33, 37.

3.      As a result of this claim, this is a case arising under the laws of the United States over which this Court has original jurisdiction, and which is removable without regard to the citizenship of the parties. *See* 28 U.S.C. §§ 1331, 1441. The remaining claims are within the Court's supplemental jurisdiction. Regardless, the entire action may be removed.  28 U.S.C. § 1441(c)(1).

4.      The Northern District of Florida, Tallahassee Division, embraces the place where the state court action is pending. *See* 28 U.S.C. § 1441(a); N.D. Fla. Loc. R. 3.1(A)(3).

5.      The Secretary is simultaneously filing a Notice of Removal pursuant to 28 U.S.C. § 1446(d) with the Clerk of the Court for the Circuit Court in and for Leon County, Florida, and giving written notice to all other parties.

6.      Pursuant to 28 U.S.C. § 1446 and Northern District of Florida Local Rule 7.2, true and legible copies of all process, pleadings, motions, and orders served upon the Secretary, or otherwise on file in the state court, are attached as composite Exhibit B.

Respectfully submitted by:

BRADLEY R. MCVAY (FBN 79034)
  *Interim General Counsel*
  brad.mcvay@dos.myflorida.com
ASHLEY E. DAVIS (FBN 48032)
  *Deputy General Counsel*
  ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building Suite, 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
(850) 245-6536 / (850) 245-6127 (fax)

*/s/ Gary V. Perko*
MOHAMMAD O. JAZIL (FBN 72556)
  mjazil@hgslaw.com
GARY V. PERKO (FBN 855898)
  gperko@hgslaw.com
MALCOLM N. MEANS  (FBN 0127586)
  mmeans@hgslaw.com
HOPPING GREEN & SAMS, P.A.
119 South Monroe Street, Suite 300
Tallahassee, Florida 32301
(850) 222-7500 / (850) 224-8551 (fax)

Dated:  November 16, 2018          ***Counsel for the Secretary of State***

3

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic mail through the Court's CM/ECF system to all counsel of record this 16th day of November, 2018.

<u>/s/ Gary V. Perko</u>
Attorney



IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

BILL NELSON FOR U.S. SENATE,

        Plaintiff,

v.

KEN DETZNER, in his official capacity as
Florida Secretary of State,

        Defendant.

_____

2018 CA 002443

**COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff, Bill Nelson for U.S. Senate ("Plaintiff"), through undersigned counsel, brings

this suit against Ken Detzner, in his official capacity as Florida Secretary of State ("Defendant"),

and alleges:

## JURISDICTION AND VENUE

1.      This is a lawsuit for declaratory and injunctive relief under Fla. Stat. §§ 86.011

and 26.012(2)(c), over which this Court has jurisdiction.  This lawsuit seeks declaratory and

injunctive relief for violations of the United States Constitution and Florida statutory law.

2.      Venue is proper in Leon County, Florida under Fla. Stat. § 47.011 because the

Secretary of State is a party to this action and the Florida Department of State maintains its

principal place of business in Leon County, and because all or part of the claims for relief at

issue in this litigation arose in Leon County.

## PARTIES

3.      Plaintiff, Bill Nelson for U.S. Senate, is a duly organized political campaign in

support of Bill Nelson's election to the United States Senate, representing the State of Florida. Plaintiff's interests in enforcing Florida's election laws, and ensuring a fair election, are adversely affected by the conduct complained of below.

4.    Defendant Ken Detzner is sued in his official capacity as Secretary of State of the State of Florida.  Pursuant to Fla. Stat. § 97.012, the Secretary of State is the chief elections officer of the State and is therefore responsible for the administration of state laws affecting voting, including with respect to the general election held on November 6, 2018.  As Secretary of State, Defendant Detzner's duties consist, among other things, of "[o]btain[ing] and maintain[ing] uniformity in the interpretation and implementation of the election laws."  *Id*. at § 97.012(1).  The Secretary of State is also tasked with ensuring that county supervisors of elections perform their statutory duties, *see id*. at 97.012(14), is responsible for providing technical assistance to county supervisors of elections on voting systems, *see id*. at 97.012(5), and is responsible for "[p]roviding written direction and opinions to the supervisors of elections on the performance of their official duties with respect to the Florida Election Code or rules adopted by the Department of State."  *Id*. at 97.012(16).

## FACTS

5.    The candidates for U.S. Senator from Florida are currently separated by a mere .15% of more than 8 million votes cast.  As a result, the Secretary of State has declared a machine recount of the U.S. Senate race, which is currently underway (or has been completed) in all 67 Florida counties.

6.    If the machine recount in the Senate race indicates that a candidate lost by one-quarter of a percent or less of the votes cast for the office, "a manual recount of the overvotes and undervotes cast in the entire geographic jurisdiction of such office" must be ordered by the

Secretary of State—but only if certain conditions are met.  Fla. Stat. § 102.166(1).  Specifically, a manual recount is ordered *unless* the "number of overvotes and undervotes is fewer than the number of votes needed to change the outcome of the election."  *Id*.  In short, the very premise of a manual recount is that the results of the election may ride on counting additional ballots and narrow margins.

7.     Given the razor-thin margin separating the two candidates for U.S. Senate, that race is almost certain to go to a manual recount once the machine recount is completed.

### Sequential vs. Simultaneous Manual Recounting

8.     On information and belief, multiple county canvassing boards throughout the State intend to perform their manual recounts of optical scan ballots, should the Secretary order more than one, simultaneously rather than sequentially.  That is in direction violation of Florida law and regulations.

9.     Under Florida statute, the Department of State is required to "adopt detailed rules prescribing additional recount procedures for each certified voting system which shall be uniform to the extent practicable." Fla. Stat. § 102.166(5)(d). The rules promulgated pursuant to this statutory mandate clearly indicate that when multiple manual recounts have been ordered, the manual recounts proceed sequentially, with votes analyzed one race at a time, rather than simultaneously.

10.     For example, the regulations provide that when conducting manual recounts of optical scan ballots in which ballots for more than one race have been outstacked during the machine recount, ballots must be further sorted so that only the ballots containing over- or undervotes for one race are outstacked before the manual recount begins. More specifically, county canvassing boards are instructed that the election parameters of the vote tabulating

equipment must be reset so that "only the overvoted and the undervoted ballots for one recounted race will be outstacked." Fla. Admin. Code § 1S-2.031(5)(d)(1). Then, all ballots outstacked during the machine recount must be reintroduced through the tabulating equipment "to outstack the ballots for *the first manually recounted race.*" *Id.* § 1S-2.031(5)(d)(4) (emphasis added).

11.     The regulations further provide that once the counting teams and canvassing board have fulfilled their duties to review over- and undervoted ballots in the first manually recounted race, they must recompile all the outstacked ballots from the machine recount, reintroduce all of those ballots into the tabulating equipment so that only the over- and undervoted ballots for another race subject to the manual recount are outstacked, and begin the review process again. *Id.* § 1S-2.031(5)(d)(10).

12.     Within each of these regulatory provisions is a mandatory "shall." "[I]t is frequently unambiguously the case that '[t]he word 'shall' is mandatory in nature.'" *Allstate Insurance Company v. Orthopedic Specialists*, 212 So.3d 973, 978 (Fla. 2017) (quoting *Sanders v. City of Orlando*, 997 So.2d 1089, 1095 (Fla. 2008)). In the recount regulations, it is clear that "shall" is mandatory.  Were it otherwise, the result could be the illegal double-counting of votes that have already been registered and counted by the tabulating equipment during the machine recount.

13.     More specifically, consider a situation in which a vote in one race that is subject to a manual recount is registered during the machine recount as a vote for a candidate in that race.  Next, imagine that the vote is erroneously reviewed in the manual recount because the ballot contains an over- or undervote in *another* race, and is determined to contain a vote for the candidate in the first race.  In this situation, the voter's selection in the first race will be counted and included in the final recount results *twice*—once in the machine recount and once in the

manual recount.

14.     This will occur because when a county performs its review of all races subject to a manual recount simultaneously, ballots that contain over- or undervotes for one race will be mixed and reviewed with ballots containing over- and undervotes in two races. If this mixing occurs, there will be no way to distinguish between ballots the tabulating equipment registered as containing one over- or undervote from ballots it registered as containing two. Therefore, ballots that contain only one over- or undervote will be impermissibly reviewed by counting teams and canvassing boards for both races, and the voter's choice in the race in which they did not over- or undervote will be counted twice.

15.     Such a scheme would clearly violate the constitutional standard for ballot counting set forth in *Bush v. Gore*, 531 U.S. 98, 107–08 (2000) (explaining how differing recount procedures between counties violated the Equal Protection Clause). "[T]he idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government." *Moore v. Ogilvie*, 394 U.S. 814, 819 (1969).  If counties are allowed to violate state regulations requiring sequential recounts, and in the process count one vote for one candidate more than once, these recounts will not only skirt but surpass the line of unconstitutionality.  Plainly, the votes of certain voters cannot be counted twice when the votes of other voters are counted once.

16.     On November 14, 2018, Plaintiff wrote to the Director of the Department of State's Division of Elections seeking issuance of an immediate advisory opinion pursuant to Fla. Stat. § 102.23 and Fla. Admin. Code § 1S-2.010 directing each county canvassing board that each manual recount must be conducted sequentially, beginning with the race at the top of the ticket.  Plaintiff received no response, and no guidance has issued.

17.     Without such guidance, several counties will implement their plans to conduct simultaneous manual recounts in at least two races and will as a result double-count votes that have already been registered and counted during the machine recount.

***Prohibition on the Use of Writing Utensils and Electronic Devices During the Recount***

18.     On information and belief, counties have also indicated their intention to prohibit representatives of the campaigns and parties who are observing the counting teams' and canvassing boards' reviews of the ballots from using writing utensils and electronic devices.

19.     "It is the policy of this state that all state, county, and municipal records are open for personal inspection and copying by any person." Fla. Stat. § 119.01(1).

20.     Ballots are public records under Florida law and are subject to disclosure under Florida's Sunshine laws. *See* Fla. Stat. § 119.011(12); *see also* Fla. Stat. § 119.07(5).  Indeed, courts have specifically found that used ballots constitute public records. *Rogers v. Hood*, 906 So. 2d 1220, 1223 (Fla. Dist. Ct. App. 2005) ("Nothing could be more obvious than that a ballot becomes a public record once it is voted.").

21.     Public records such as ballots must be made available not only for inspection under Florida's Sunshine laws, but also copying. *See* Fla. Stat. §§ 119.07(1).

22.     By preventing campaign and party representatives from taking notes or using electronic devices during the manual recount, counties are unlawfully altering the public's right to view and copy public records under Florida law. Even if copies of the ballots were prohibited – and they are not – the right to inspect public records is meaningless if the public is not afforded a right to take notes on what is being inspected.

23.     Similarly, because some counties are allowing campaign and party representatives to take notes and use electronic devices while observing the recount, the ability of

representatives to effectively engage in the process will vary greatly depending on which county the representative is in.

24.     Because the effectiveness of representatives will be so greatly curtailed in counties that do not allow for the use of writing utensils or electronic devices, the process and results of these manual recounts will vary greatly by county. This will be in direct violation of the constitutional standards set forth in *Bush v. Gore*, 531 U.S. 98 (2000), which requires material uniformity of recount procedures. Moreover, these inconsistencies run afoul of the Secretary of State's duty to maintain the uniformity in the implementation of the election laws. Fla. Stat. § 97.012(1).

### *Inconsistent Restrictions on Oral Argument Before the Canvassing Boards*

25.     On information and belief, some counties have also indicated an intent to prohibit lawyers and other candidate or party representatives from speaking before the canvassing boards, compelling them to submit written objections in lieu of oral argument. Such a process may result in unnecessary delay and complication during the manual recount.

26.     Varying approaches will impact the recount as well as the ability of representatives and observers to engage in the recount process. This inconsistency is contrary to *Bush v, Gore*, 531 U.S. 98 (2000), and the Secretary of State's obligation to maintain uniformity in the interpretation and implementation of election law. *See* Fla. Stat. § 97.012(1).

27.     Rather than rely solely on written submissions to object to ballots, Plaintiffs request that the representatives of the campaigns and parties be granted access and opportunity to argue before the canvassing boards in the event of a dispute. Allowing the parties to make oral objections to ballots will help the canvassing boards deal with objections in a timely manner, ensuring that the sequential recount proceeds on schedule.

28.     To prevent delay and confusion, Plaintiff requests that the Director of the Department of State's Division of Elections issue an immediate advisory opinion directing all county canvassing boards to allow representatives of the campaigns and parties to speak before the canvassing boards. Such an opinion will also ensure a uniform approach statewide consistent with the requirements of *Bush v. Gore*, 531 U.S. 98 (2000).

## CAUSES OF ACTION

### COUNT I

**(For Injunctive Relief to Remedy Defendant's Failure to Provide Written Directions and Opinions to the Supervisors of Elections under Fla. Stat. § 97.012)**

29.     Plaintiff restates and incorporates paragraphs 1-28.

30.     Defendant has a duty to "adopt detailed rules prescribing additional recount procedures for each certified voting system which shall be uniform to the extent practicable." Fla. Stat. § 102.166(5)(d).

31.     When multiple manual recounts have been ordered, state regulations require sequential recounting. These regulations instruct county canvassing boards to reset the vote tabulating equipment so that "only the overvoted and the undervoted ballots for one recounted race will be outstacked." Fla. Admin. Code § 1S-2.031(5)(d)(1). Then, all ballots outstacked during the machine recount must be reintroduced through the tabulating equipment "to outstack the ballots for *the first manually recounted race.*" *Id.* § 1S-2.031(5)(d)(4) (emphasis added); *see also Id.* § 1S-2.031(5)(d)(10).

32.     If the injunctive relief sought—written direction and an advisory opinion ordering a sequential recount—is not ordered, multiple counties will not conduct recounts in the statutorily prescribed sequential manner.

33.     If the injunctive relief sought is not granted, the recount will proceed in an

inconsistent manner in violation of *Bush v. Gore*, 531 U.S. 98 (2000).

## COUNT II

**(For Injunctive Relief to Allow Plaintiffs to Use Either Pens or Electronics to Take Notes in the Counting Area to Preserve Mater Uniformity of Recount Procedures under)**

34.     Plaintiff restates and incorporates paragraphs 1-33.

35.     Ballots are public records under Florida law. *See* Fla. Stat. § 119.011(12); *see also* Fla. Stat. § 119.07(5). All public records are open to copying. Fla. Stat. §§ 119.07(1).

36.     Upon information and belief, some counties allow the use of electronic devices or writing utensils to take notes at the counting tables while others—such as Broward County—do not.

37.     If the requested injunction allowing the use of writing utensils or electronic devices in the counting areas is not granted, the ability of observer to track the recount will vary from county to county. This violates the Florida statutes governing public records and the constitutional standards set forth in *Bush v. Gore*, 531 U.S. 98 (2000), which requires material uniformity of recount procedures.

## COUNT III

**(For Injunctive Relief to Allow Plaintiffs the Access and Opportunity to Present Oral Argument to the County Canvassing Boards for Purpose of Uniformity and Expediency)**

38.     Plaintiff restates and incorporates paragraphs 1-37.

39.     Upon information and belief, during the recount some county canvassing boards have indicated that campaign and party representatives who object to ballots will be limited to written objections.

40.     The opportunity to present oral argument to the canvassing boards in the event of an objection is materially important to preserving the effectiveness of the recount and preserving

uniformity of the recount across the state.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.      Set an accelerated hearing pursuant to Fla. Stat. § 119.11(1);

B.      Enter a temporary and permanent injunction directing each county canvassing board that:

      i.   Each manual recount must be conducted sequentially, beginning with the race at the top of the ticket;

      ii.  Observer representatives of the campaigns and parties be allowed to take notes and use electronic devices while observing the recount; and

      iii. Representatives of the campaigns and parties are allowed to speak before the canvassing boards in the event of a ballot objection

C.      Any other relief as the Court Deems appropriate.

Dated: November 15, 2018

Respectfully submitted,

_____/s/_____
RONALD G. MEYER
Florida Bar No. 0148248
Email:  rmeyer@meyerbrookslaw.com
JENNIFER S. BLOHM
Florida Bar No. 0106290
Email:  jblohm@meyerbrookslaw.com
MEYER, BROOKS, DEMMA AND
BLOHM, P.A.
131 North Gadsden Street
Post Office Box 1547
Tallahassee, FL 32302-1547
Telephone: (850) 878-5212
Facsimile: (850) 656-6750

Marc E. Elias*
MElias@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211

David L. Anstaett*
DAnstaett@perkinscoie.com
One East Main Street
Suite 201
Madison, WI  53703-5118
Telephone:  608.663.7460
Facsimile:  608.663.7499

*Seeking Pro Hac Vice Admission

Co-Counsel for Plaintiffs

B

# FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law.  This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes.  (See instructions for completion.)

---

## I.   CASE STYLE

IN THE CIRCUIT COURT OF THE <u>SECOND</u>   JUDICIAL CIRCUIT,

IN AND FOR <u>LEON</u>   COUNTY, FLORIDA

Case No.: <u>  2018 CA 002443  </u>

Judge: _____

<u>Bill Nelson for U.S. Senate</u>
 Plaintiff

   vs.

<u>Ken Detzner</u>
Defendant

---

## II.   TYPE OF CASE

- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence – other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure $0 - $50,000
  - ☐ Commercial foreclosure $50,001 - $249,999
  - ☐ Commercial foreclosure $250,000 or more
  - ☐ Homestead residential foreclosure $0 – 50,000
  - ☐ Homestead residential foreclosure $50,001 - $249,999
  - ☐ Homestead residential foreclosure $250,000 or more
  - ☐ Non-homestead residential foreclosure $0 - $50,000
  - ☐ Non-homestead residential foreclosure $50,001 - $249,999

- ☐ Non-homestead residential foreclosure $250,00 or more
- ☐ Other real property actions $0 - $50,000
- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more

- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical
  - ☐ Malpractice – other professional
- ☒ Other
  - ☐ Antitrust/Trade Regulation
  - ☐ Business Transaction
  - ☒ Circuit Civil - Not Applicable
  - ☐ Constitutional challenge-statute or ordinance
  - ☐ Constitutional challenge-proposed amendment
  - ☐ Corporate Trusts
  - ☐ Discrimination-employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.   **REMEDIES SOUGHT** (check all that apply):
      ☐   Monetary;
      ☒   Non-monetary declaratory or injunctive relief;
      ☐   Punitive

IV.   **NUMBER OF CAUSES OF ACTION:  (     )**
(Specify)

   <u>3</u>

V.   **IS THIS CASE A CLASS ACTION LAWSUIT?**
      ☐   Yes
      ☒   No

VI.   **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
      ☒   No
      ☐   Yes – If "yes" list all related cases by name, case number and court:

VII.   **IS JURY TRIAL DEMANDED IN COMPLAINT?**
      ☐   Yes
      ☒   No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature <u>s/ Ronald G. Meyer</u>     FL Bar No.: <u>148248</u>
      Attorney or party                            (Bar number, if attorney)

   <u>Ronald G. Meyer</u>     <u>11/15/2018</u>
      (Type or print name)                        Date

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

**BILL NELSON FOR U.S. SENATE,**

Plaintiff,

v.

Case No.   2018 CA 002443

**KEN DETZNER, in his official capacity as Florida
Secretary of State,**

Defendant.

_____/

**SUMMONS**

**THE STATE OF FLORIDA
To Each Sheriff of the State:**

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint for Declaratory
and Injunctive Relief on defendant

      KEN DETZNER, in his official capacity as Florida Secretary of State
      R.A. Gray Building
      500 South Bronough Street
      Tallahassee, Florida  32399-0250
      (850) 245-6500

Each defendant is required to serve written defenses to the complaint or petition on plaintiff's
attorney whose name and address is

      Ronald G. Meyer, Esquire
      Jennifer S. Blohm, Esquire
      Meyer Brooks Demma and Blohm, P.A.
      Post Office Box 1547
      131 N. Gadsden Street (32301)
      Tallahassee, FL  32302

within 40 days after service of this summons on that defendant, exclusive of the day of service,
and to file the original of the defenses with the clerk of this court either before service on
plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be
entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and the seal of said Court on                        .

Gwen Marshall
Clerk of Circuit Court

By      _____

Deputy Clerk
Civil Division
Leon County Courthouse
301 South Monroe Street, Suite 100
Tallahassee, Florida 32301
Phone (850) 606-4170

2

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

BILL NELSON FOR U.S. SENATE,                           2018 CA 002443

        Plaintiff,

v.

KEN DETZNER, in his official capacity as
Florida Secretary of State,

        Defendant.

_____

**COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff, Bill Nelson for U.S. Senate ("Plaintiff"), through undersigned counsel, brings

this suit against Ken Detzner, in his official capacity as Florida Secretary of State ("Defendant"),

and alleges:

**JURISDICTION AND VENUE**

1.      This is a lawsuit for declaratory and injunctive relief under Fla. Stat. §§ 86.011

and 26.012(2)(c), over which this Court has jurisdiction.  This lawsuit seeks declaratory and

injunctive relief for violations of the United States Constitution and Florida statutory law.

2.      Venue is proper in Leon County, Florida under Fla. Stat. § 47.011 because the

Secretary of State is a party to this action and the Florida Department of State maintains its

principal place of business in Leon County, and because all or part of the claims for relief at

issue in this litigation arose in Leon County.

**PARTIES**

3.      Plaintiff, Bill Nelson for U.S. Senate, is a duly organized political campaign in

support of Bill Nelson's election to the United States Senate, representing the State of Florida.
Plaintiff's interests in enforcing Florida's election laws, and ensuring a fair election, are
adversely affected by the conduct complained of below.

4.      Defendant Ken Detzner is sued in his official capacity as Secretary of State of the
State of Florida.  Pursuant to Fla. Stat. § 97.012, the Secretary of State is the chief elections
officer of the State and is therefore responsible for the administration of state laws affecting
voting, including with respect to the general election held on November 6, 2018.  As Secretary of
State, Defendant Detzner's duties consist, among other things, of "[o]btain[ing] and
maintain[ing] uniformity in the interpretation and implementation of the election laws."  *Id*. at
§ 97.012(1).  The Secretary of State is also tasked with ensuring that county supervisors of
elections perform their statutory duties, *see id*. at 97.012(14), is responsible for providing
technical assistance to county supervisors of elections on voting systems, *see id*. at 97.012(5),
and is responsible for "[p]roviding written direction and opinions to the supervisors of elections
on the performance of their official duties with respect to the Florida Election Code or rules
adopted by the Department of State."  *Id*. at 97.012(16).

## FACTS

5.      The candidates for U.S. Senator from Florida are currently separated by a mere
.15% of more than 8 million votes cast.  As a result, the Secretary of State has declared a
machine recount of the U.S. Senate race, which is currently underway (or has been completed) in
all 67 Florida counties.

6.      If the machine recount in the Senate race indicates that a candidate lost by one-
quarter of a percent or less of the votes cast for the office, "a manual recount of the overvotes
and undervotes cast in the entire geographic jurisdiction of such office" must be ordered by the

Secretary of State—but only if certain conditions are met.  Fla. Stat. § 102.166(1).  Specifically, a manual recount is ordered *unless* the "number of overvotes and undervotes is fewer than the number of votes needed to change the outcome of the election."  *Id*.  In short, the very premise of a manual recount is that the results of the election may ride on counting additional ballots and narrow margins.

7.     Given the razor-thin margin separating the two candidates for U.S. Senate, that race is almost certain to go to a manual recount once the machine recount is completed.

### Sequential vs. Simultaneous Manual Recounting

8.     On information and belief, multiple county canvassing boards throughout the State intend to perform their manual recounts of optical scan ballots, should the Secretary order more than one, simultaneously rather than sequentially.  That is in direction violation of Florida law and regulations.

9.     Under Florida statute, the Department of State is required to "adopt detailed rules prescribing additional recount procedures for each certified voting system which shall be uniform to the extent practicable." Fla. Stat. § 102.166(5)(d). The rules promulgated pursuant to this statutory mandate clearly indicate that when multiple manual recounts have been ordered, the manual recounts proceed sequentially, with votes analyzed one race at a time, rather than simultaneously.

10.     For example, the regulations provide that when conducting manual recounts of optical scan ballots in which ballots for more than one race have been outstacked during the machine recount, ballots must be further sorted so that only the ballots containing over- or undervotes for one race are outstacked before the manual recount begins. More specifically, county canvassing boards are instructed that the election parameters of the vote tabulating

equipment must be reset so that "only the overvoted and the undervoted ballots for one recounted race will be outstacked." Fla. Admin. Code § 1S-2.031(5)(d)(1). Then, all ballots outstacked during the machine recount must be reintroduced through the tabulating equipment "to outstack the ballots for *the first manually recounted race.*" *Id.* § 1S-2.031(5)(d)(4) (emphasis added).

11.     The regulations further provide that once the counting teams and canvassing board have fulfilled their duties to review over- and undervoted ballots in the first manually recounted race, they must recompile all the outstacked ballots from the machine recount, reintroduce all of those ballots into the tabulating equipment so that only the over- and undervoted ballots for another race subject to the manual recount are outstacked, and begin the review process again. *Id.* § 1S-2.031(5)(d)(10).

12.     Within each of these regulatory provisions is a mandatory "shall." "[I]t is frequently unambiguously the case that '[t]he word 'shall' is mandatory in nature.'" *Allstate Insurance Company v. Orthopedic Specialists*, 212 So.3d 973, 978 (Fla. 2017) (quoting *Sanders v. City of Orlando*, 997 So.2d 1089, 1095 (Fla. 2008)). In the recount regulations, it is clear that "shall" is mandatory.  Were it otherwise, the result could be the illegal double-counting of votes that have already been registered and counted by the tabulating equipment during the machine recount.

13.     More specifically, consider a situation in which a vote in one race that is subject to a manual recount is registered during the machine recount as a vote for a candidate in that race.  Next, imagine that the vote is erroneously reviewed in the manual recount because the ballot contains an over- or undervote in *another* race, and is determined to contain a vote for the candidate in the first race.  In this situation, the voter's selection in the first race will be counted and included in the final recount results *twice*—once in the machine recount and once in the

manual recount.

14.     This will occur because when a county performs its review of all races subject to a manual recount simultaneously, ballots that contain over- or undervotes for one race will be mixed and reviewed with ballots containing over- and undervotes in two races. If this mixing occurs, there will be no way to distinguish between ballots the tabulating equipment registered as containing one over- or undervote from ballots it registered as containing two. Therefore, ballots that contain only one over- or undervote will be impermissibly reviewed by counting teams and canvassing boards for both races, and the voter's choice in the race in which they did not over- or undervote will be counted twice.

15.     Such a scheme would clearly violate the constitutional standard for ballot counting set forth in *Bush v. Gore*, 531 U.S. 98, 107–08 (2000) (explaining how differing recount procedures between counties violated the Equal Protection Clause). "[T]he idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government." *Moore v. Ogilvie*, 394 U.S. 814, 819 (1969).  If counties are allowed to violate state regulations requiring sequential recounts, and in the process count one vote for one candidate more than once, these recounts will not only skirt but surpass the line of unconstitutionality.  Plainly, the votes of certain voters cannot be counted twice when the votes of other voters are counted once.

16.     On November 14, 2018, Plaintiff wrote to the Director of the Department of State's Division of Elections seeking issuance of an immediate advisory opinion pursuant to Fla. Stat. § 102.23 and Fla. Admin. Code § 1S-2.010 directing each county canvassing board that each manual recount must be conducted sequentially, beginning with the race at the top of the ticket.  Plaintiff received no response, and no guidance has issued.

17.     Without such guidance, several counties will implement their plans to conduct simultaneous manual recounts in at least two races and will as a result double-count votes that have already been registered and counted during the machine recount.

***Prohibition on the Use of Writing Utensils and Electronic Devices During the Recount***

18.     On information and belief, counties have also indicated their intention to prohibit representatives of the campaigns and parties who are observing the counting teams' and canvassing boards' reviews of the ballots from using writing utensils and electronic devices.

19.     "It is the policy of this state that all state, county, and municipal records are open for personal inspection and copying by any person." Fla. Stat. § 119.01(1).

20.     Ballots are public records under Florida law and are subject to disclosure under Florida's Sunshine laws. *See* Fla. Stat. § 119.011(12); *see also* Fla. Stat. § 119.07(5).  Indeed, courts have specifically found that used ballots constitute public records. *Rogers v. Hood*, 906 So. 2d 1220, 1223 (Fla. Dist. Ct. App. 2005) ("Nothing could be more obvious than that a ballot becomes a public record once it is voted.").

21.     Public records such as ballots must be made available not only for inspection under Florida's Sunshine laws, but also copying. *See* Fla. Stat. §§ 119.07(1).

22.     By preventing campaign and party representatives from taking notes or using electronic devices during the manual recount, counties are unlawfully altering the public's right to view and copy public records under Florida law. Even if copies of the ballots were prohibited – and they are not – the right to inspect public records is meaningless if the public is not afforded a right to take notes on what is being inspected.

23.     Similarly, because some counties are allowing campaign and party representatives to take notes and use electronic devices while observing the recount, the ability of

representatives to effectively engage in the process will vary greatly depending on which county the representative is in.

24. Because the effectiveness of representatives will be so greatly curtailed in counties that do not allow for the use of writing utensils or electronic devices, the process and results of these manual recounts will vary greatly by county. This will be in direct violation of the constitutional standards set forth in *Bush v. Gore*, 531 U.S. 98 (2000), which requires material uniformity of recount procedures. Moreover, these inconsistencies run afoul of the Secretary of State's duty to maintain the uniformity in the implementation of the election laws. Fla. Stat. § 97.012(1).

### *Inconsistent Restrictions on Oral Argument Before the Canvassing Boards*

25. On information and belief, some counties have also indicated an intent to prohibit lawyers and other candidate or party representatives from speaking before the canvassing boards, compelling them to submit written objections in lieu of oral argument. Such a process may result in unnecessary delay and complication during the manual recount.

26. Varying approaches will impact the recount as well as the ability of representatives and observers to engage in the recount process. This inconsistency is contrary to *Bush v, Gore*, 531 U.S. 98 (2000), and the Secretary of State's obligation to maintain uniformity in the interpretation and implementation of election law. *See* Fla. Stat. § 97.012(1).

27. Rather than rely solely on written submissions to object to ballots, Plaintiffs request that the representatives of the campaigns and parties be granted access and opportunity to argue before the canvassing boards in the event of a dispute. Allowing the parties to make oral objections to ballots will help the canvassing boards deal with objections in a timely manner, ensuring that the sequential recount proceeds on schedule.

28.     To prevent delay and confusion, Plaintiff requests that the Director of the Department of State's Division of Elections issue an immediate advisory opinion directing all county canvassing boards to allow representatives of the campaigns and parties to speak before the canvassing boards. Such an opinion will also ensure a uniform approach statewide consistent with the requirements of *Bush v. Gore*, 531 U.S. 98 (2000).

## CAUSES OF ACTION

### COUNT I

**(For Injunctive Relief to Remedy Defendant's Failure to Provide Written Directions and Opinions to the Supervisors of Elections under Fla. Stat. § 97.012)**

29.     Plaintiff restates and incorporates paragraphs 1-28.

30.     Defendant has a duty to "adopt detailed rules prescribing additional recount procedures for each certified voting system which shall be uniform to the extent practicable." Fla. Stat. § 102.166(5)(d).

31.     When multiple manual recounts have been ordered, state regulations require sequential recounting. These regulations instruct county canvassing boards to reset the vote tabulating equipment so that "only the overvoted and the undervoted ballots for one recounted race will be outstacked." Fla. Admin. Code § 1S-2.031(5)(d)(1). Then, all ballots outstacked during the machine recount must be reintroduced through the tabulating equipment "to outstack the ballots for *the first manually recounted race.*" *Id.* § 1S-2.031(5)(d)(4) (emphasis added); *see also Id.* § 1S-2.031(5)(d)(10).

32.     If the injunctive relief sought—written direction and an advisory opinion ordering a sequential recount—is not ordered, multiple counties will not conduct recounts in the statutorily prescribed sequential manner.

33.     If the injunctive relief sought is not granted, the recount will proceed in an

inconsistent manner in violation of *Bush v. Gore*, 531 U.S. 98 (2000).

## COUNT II

**(For Injunctive Relief to Allow Plaintiffs to Use Either Pens or Electronics to Take Notes in the Counting Area to Preserve Mater Uniformity of Recount Procedures under)**

34.     Plaintiff restates and incorporates paragraphs 1-33.

35.     Ballots are public records under Florida law. *See* Fla. Stat. § 119.011(12); *see also* Fla. Stat. § 119.07(5). All public records are open to copying. Fla. Stat. §§ 119.07(1).

36.     Upon information and belief, some counties allow the use of electronic devices or writing utensils to take notes at the counting tables while others—such as Broward County—do not.

37.     If the requested injunction allowing the use of writing utensils or electronic devices in the counting areas is not granted, the ability of observer to track the recount will vary from county to county. This violates the Florida statutes governing public records and the constitutional standards set forth in *Bush v. Gore*, 531 U.S. 98 (2000), which requires material uniformity of recount procedures.

## COUNT III

**(For Injunctive Relief to Allow Plaintiffs the Access and Opportunity to Present Oral Argument to the County Canvassing Boards for Purpose of Uniformity and Expediency)**

38.     Plaintiff restates and incorporates paragraphs 1-37.

39.     Upon information and belief, during the recount some county canvassing boards have indicated that campaign and party representatives who object to ballots will be limited to written objections.

40.     The opportunity to present oral argument to the canvassing boards in the event of an objection is materially important to preserving the effectiveness of the recount and preserving

uniformity of the recount across the state.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.     Set an accelerated hearing pursuant to Fla. Stat. § 119.11(1);

B.     Enter a temporary and permanent injunction directing each county canvassing board that:

     i.  Each manual recount must be conducted sequentially, beginning with the race at the top of the ticket;

     ii.  Observer representatives of the campaigns and parties be allowed to take notes and use electronic devices while observing the recount; and

     iii.  Representatives of the campaigns and parties are allowed to speak before the canvassing boards in the event of a ballot objection

C.     Any other relief as the Court Deems appropriate.

Dated: November 15, 2018

Respectfully submitted,

_____/s/_____
RONALD G. MEYER
Florida Bar No. 0148248
Email:  rmeyer@meyerbrookslaw.com
JENNIFER S. BLOHM
Florida Bar No. 0106290
Email:  jblohm@meyerbrookslaw.com
MEYER, BROOKS, DEMMA AND
BLOHM, P.A.
131 North Gadsden Street
Post Office Box 1547
Tallahassee, FL 32302-1547
Telephone: (850) 878-5212
Facsimile: (850) 656-6750

Marc E. Elias*
MElias@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211

David L. Anstaett*
DAnstaett@perkinscoie.com
One East Main Street
Suite 201
Madison, WI  53703-5118
Telephone:  608.663.7460
Facsimile:  608.663.7499

 *Seeking Pro Hac Vice Admission

Co-Counsel for Plaintiffs



# LEON COUNTY Receipt of Transaction
## Receipt #   1383451

GWEN MARSHALL
Clerk of Court and Comptroller
LEON COUNTY, FLORIDA

**Received From:**
Evelyn T. Thomas
Post Office Box 1547
Tallahassee, FL 32302

**On Behalf Of:**
BILL NELSON FOR U.S. SENATE

POST OFFICE BOX 1547
TALLAHASSEE, FL 32302

On: 11/15/2018  2:23:58PM
Transaction # 100636806
Cashiered by: T BODIFORD

| CaseNumber 2018 CA 002443 |
|---|

**Judge  KAREN A GIEVERS**

**BILL NELSON FOR U.S. SENATE  *VS*  KENNETH DETZNER**

Comments:

| Fee Description | Fee | Prior Paid | Waived | Due | Paid | Balance |
|---|---|---|---|---|---|---|
| (COMP_CA) COMPLAINT | 400.00 | 0.00 | 0.00 | 400.00 | 400.00 | 0.00 |
| (SUIS) SUMMONS ISSUED | 10.00 | 0.00 | 0.00 | 10.00 | 10.00 | 0.00 |
| **Total:** | **410.00** | **0.00** | **0.00** | **410.00** | **410.00** | **0.00** |
| **Grand Total:** | **410.00** | **0.00** | **0.00** | **410.00** | **410.00** | **0.00** |

| PAYMENTS |
|---|

| Payment Type | Reference | | Amount | Refund | Overage | Change | Net Amount |
|---|---|---|---|---|---|---|---|
| CREDIT CARD EFILE | 80848558 | OK | 410.00 | 0.00 | 0.00 | 0.00 | 410.00 |
| | | **Payments Total:** | **410.00** | **0.00** | **0.00** | **0.00** | **410.00** |

Page 1 of 1

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
IN AND FOR LEON COUNTY, FLORIDA

BILL NELSON FOR U.S. SENATE
    Plaintiff(s),

vs.                            CASE NO. 2018 CA 002443

DETZNER, KENNETH
    Defendant(s).

_____/

## ORDER SETTING CASE MANAGEMENT CONFERENCE

THIS CAUSE came before the Court on November 15, 2018 for sua sponte review.  The Court having reviewed the court file, having, determined that the case appears to be election-related and therefore entitled to high priority pursuant to Rule 2.215(g), and being otherwise fully advised in the premises, it is hereby:

ORDERED AND ADJUDGED that this case is set for Case Management Conference pursuant to Rule 1.200 on 11/16/2018, at 11:30 AM E.T. before the Honorable Karen Gievers, Leon County Courthouse, 301 South Monroe Street, Room 365-D, Tallahassee, FL 32301 to address the issue of whether the Court has jurisdiction given the pending federal cases, scheduling, the need for an

evidentiary hearing and the issues to be resolved.
Counsel should submit a joint pre-hearing stipulation
that addresses the jurisdictional issues and identifies
any stipulated issues of fact and any issues of fact
and law to be addressed by 10:00 A.M. E.T. on November
16, 2018, to allow the Court to review the parties'
positions prior to the hearing.

In accordance with the Americans with Disabilities
Act, persons needing special accommodation to
participate in this proceeding should contact the Court
Administrator's Office no later than seven days prior
to the proceeding at (850)606-4300.

ORDERED in Tallahassee, Leon County, Florida, on
11/15/2018 4:40 PM.

11/15/2018 4:40 PM 2018

e-Signed 11/15/2018 4:40 PM 2018 CA
002443
_____
Circuit Judge

Copies furnished to:


RONALD  MEYER
P O BOX 1547
TALLAHASSEE, FL  32302


BILL NELSON FOR U.S. SENATE
POST OFFICE BOX 1547
TALLAHASSEE, FL  32302


KENNETH  DETZNER
No address on file

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

BILL NELSON FOR U.S. SENATE,

        Plaintiff,

v.                             Case No. 2018 CA 2443

KEN DETZNER, in his official capacity as
Florida Secretary of State,

        Defendant.

_____

## PLAINTIFF'S NOTICE OF FILING DECLARATIONS

The Plaintiff in the above-styled matter hereby files the attached Declarations in support of its Complaint for Emergency Injunctive and Declaratory Relief:

1.      Declaration of Margaret Touchton

2.      Declaration of Justin Lamorte

3.      Declaration of Bridget Brennan

Respectfully submitted,

_____/s/_____
RONALD G. MEYER
Florida Bar No. 0148248
Email:  rmeyer@meyerbrookslaw.com
JENNIFER S. BLOHM
Florida Bar No. 0106290
Email:  jblohm@meyerbrookslaw.com
MEYER, BROOKS, DEMMA AND
BLOHM, P.A.
131 North Gadsden Street
Post Office Box 1547
Tallahassee, FL 32302-1547
Telephone: (850) 878-5212
Facsimile: (850) 656-6750

Marc E. Elias*
MElias@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211

David L. Anstaett*
DAnstaett@perkinscoie.com
One East Main Street
Suite 201
Madison, WI  53703-5118
Telephone:  608.663.7460
Facsimile:  608.663.7499

 *Seeking Pro Hac Vice Admission

Co-Counsel for Plaintiffs

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

BILL NELSON FOR U.S. SENATE,

        Plaintiff,

v.

KEN DETZNER, in his official capacity as Florida
Secretary of State,

        Defendant.

Case No.   2018 CA 002443

Judge:   Karen Gievers

## DECLARATION OF MARGARET TOUCHTON

Pursuant to Fla. Stat. § 92.525(2), I declare the following:

1.      My name is Margaret Touchton. I am over the age of 18 and of sound mind. I have personal knowledge of the facts stated herein and can competently testify to their truth.

2.      I work at the Democratic Senatorial Campaign Committee and have been assisting Senator Bill Nelson's campaign in its effort to ensure that every valid vote cast in Florida's 2018 U.S. Senate election is counted.

3.      In furtherance of that effort, I called supervisors of elections in several counties to inquire what procedures the county canvassing boards in those counties intended to use to carry out their manual recounts, should one or more be ordered.

4.      On November 14, 2018, I spoke with T.J. Pyche, who works for the Alachua County Board of Elections. Mr. Pyche informed me that Alachua County planned to have their counting teams and canvassing board review each ballot to determine whether the voter made a definite choice in every race subject to a recount at the same time before moving on to review the next ballot.

ATTACHMENT 1

5.      I took this to mean that for each ballot that had been outstacked after the machine recount, the counting teams and canvassing board would manually review every race subject to a recount on every outstacked ballot, regardless of whether the ballot contained one, two, or three over- or undervotes.

6.      Under penalties of perjury, I declare that I have read the foregoing declaration and that the facts stated in it are true.


Dated: November 15, 2018                    By: _____
                                                 Margaret Touchton

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

BILL NELSON FOR U.S. SENATE,

      Plaintiff,

v.

KEN DETZNER, in his official capacity as Florida
Secretary of State,

      Defendant.

Case No.   2018 CA 2443

Judge:   KAREN GIEVERS

## DECLARATION OF JUSTIN LAMORTE

Pursuant to Fla. Stat. § 92.525(2), I declare the following:

    1.     My name is Justin Lamorte. I am over the age of 18 and of sound mind. I have personal knowledge of the facts stated herein and can competently testify to their truth.

    2.     I work for the Democratic Senatorial Campaign Committee and have been assisting Senator Bill Nelson's campaign in its effort to ensure that every valid vote cast in Florida's 2018 U.S. Senate election is counted.

    3.     In furtherance of that effort, I called boards of elections in several counties to inquire what procedures the county canvassing boards in those counties intended to use to carry out their manual recounts, should one or more be ordered.

    4.     On November 13, 2018, I spoke with Katie Lenhart, who works for the Flagler County Board of Elections. Ms. Lenhart informed me that Flagler County planned to have their counting team and canvassing board review each ballot to determine whether the voter made a definite choice in every race subject to a recount at the same time before moving on to review the next ballot.

ATTCHMENT 2

5.      I took this to mean that for each ballot that had been outstacked after the machine recount, the counting team and canvassing board would manually review every race subject to a recount on every outstacked ballot, regardless of whether the ballot contained one, two, or three over- or undervotes.

6.      Under penalties of perjury, I declare that I have read the foregoing declaration and that the facts stated in it are true.


Dated: November 15, 2018

By: _____
                    Justin Lamorte

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

BILL NELSON FOR U.S. SENATE,

         Plaintiff,

v.

KEN DETZNER, in his official capacity as Florida
Secretary of State,

         Defendant.

Case No.   2018 CA 2443

Judge:  Karen Gievers

## **DECLARATION OF BRIDGET BRENNAN**

Pursuant to Fla. Stat. § 92.525(2), I declare the following:

1.     My name is Bridget Brennan. I am over the age of 18 and of sound mind. I have personal knowledge of the facts stated herein and can competently testify to their truth.

2.     I work for the Democratic Senatorial Campaign Committee and have been assisting Senator Bill Nelson's campaign in its effort to ensure that every valid vote cast in Florida's 2018 U.S. Senate election is counted.

3.     In furtherance of that effort, I called boards of elections in several counties to inquire what procedures the county canvassing boards in those counties intended to use to carry out their manual recounts, should one or more be ordered.

4.     On November 12, 2018, I spoke with Carol Rudd at the Washington County Board of Elections. Ms. Rudd informed me that Washington County planned to have their counting team and canvassing board review each ballot to determine whether the voter made a definite choice in every race subject to a recount at the same time before moving on to review the next ballot.

ATTACHMENT 3

5.    I took this to mean that for each ballot that had been outstacked after the machine recount, the counting team and canvassing board would manually review every race subject to a recount on every outstacked ballot, regardless of whether the ballot contained one, two, or three over- or undervotes.

6.    Ms. Rudd also informed me that campaign and party representatives would not be permitted to bring electronic devices to the counting tables or to take pictures of challenged ballots.

7.    Under penalties of perjury, I declare that I have read the foregoing declaration and that the facts stated in it are true.


Dated: November 15, 2018

By: _____
        Bridget Brennan